

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2009

# Mtg Elec Reg Sys Inc v. Frank Patock, Jr.

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2165

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Mtg Elec Reg Sys Inc v. Frank Patock, Jr." (2009). *2009 Decisions.* Paper 1869.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1869

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2165
_____

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.

v.

FRANK J. PATOCK, JR.; DOUGLAS LYNCH;
CLEARVIEW FINANCIAL, LLC; PLAATSDALE ASSOCIATES, LLC


CLEARVIEW FINANCIAL, LLC;
PLAATSDALE ASSOCIATES, LLC,

Appellants
_____

On Appeal from the District Court of the Virgin Islands
Division of St Thomas
(D.C. No. 3-06-cv-00190)
District Judge:  Honorable Curtis V. Gomez
_____

Submitted Under Third Circuit LAR 34.1(a)
December 8, 2008

Before:  FISHER, JORDAN and STAPLETON, *Circuit Judges*.

(Filed: February 12, 2009  )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

In this foreclosure action, defendants Clearview Financial, LLC ("Clearview") and Plaatsdale Associates, LLC ("Plaatsdale") argue that the District Court erred by ordering that any foreclosure sale surplus remaining after applying the sale proceeds to satisfy the judgment in favor of plaintiff Mortgage Electronic Registration Systems, Inc. ("MERS") be distributed to defendants Frank Patock and Douglas Lynch, the holders of the equity of redemption. For the reasons set forth below, we will reverse that portion of the judgment ordering the surplus distribution and remand this case to the District Court for proceedings in accordance with this opinion.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Patock and Lynch executed three mortgages on a parcel of real property that they owned, described as Parcel No. 157 Chocolate Hole, No. 11 Cruz Bay Quarter, St. John ("Parcel No. 157"), located in the United States Virgin Islands. First, on January 16, 2004, Patock and Lynch executed a promissory note with Flagstar Bank, FSB ("Flagstar"), in the amount of $640,000, plus interest, secured by a mortgage on Parcel No. 157 ("First Mortgage"). The First Mortgage was recorded with the Office of the

Recorder of Deeds for the District of St. Thomas and St. John ("Recorder of Deeds") on January 21, 2004.

Second, on July 5, 2006, Patock and Lynch executed a mortgage on Parcel No. 157 ("Second Mortgage") in favor of Clearview and Plaatsdale in the amount of $400,000 as security for a $1.4 million loan Clearview and Plaatsdale made to D & E Realty Co. ("D & E"). The Second Mortgage was recorded with the Recorder of Deeds on July 10, 2006. Third, on January 3, 2007, Patock and Lynch executed another mortgage on Parcel No. 157 ("Third Mortgage") in favor of Clearview and Plaatsdale as security for an additional loan of $200,000 from Clearview and Plaatsdale to D & E. The Third Mortgage was recorded with the Recorder of Deeds on January 9, 2007.

On October 23, 2006, MERS, as nominee for Flagstar, filed an action in foreclosure in the District Court of the Virgin Islands against Patock, Lynch, Clearview, and Plaatsdale after Patock and Lynch failed to cure their default on the loan secured by the First Mortgage. Patock and Lynch did not file an answer to the complaint or enter an appearance,[1] and the Clerk of Court entered default against them on December 29, 2006. MERS filed a motion for default judgment against Patock and Lynch and for summary judgment against Clearview and Plaatsdale. After Clearview and Plaatsdale "concurred" with MERS's motion, the District Court entered judgment on March 20, 2008, granting

_____

[1]Patock did eventually enter his appearance on June 17, 2008, after the District Court entered judgment.

3

MERS's motion for default judgment against Patock and Lynch and summary judgment against Clearview and Plaatsdale.

In the judgment, the District Court found that "MERS's Mortgage covering [Parcel No. 157] is a first priority lien, the 2006 mortgage held by Clearview and Plaatsdale is a second priority lien, and the 2007 mortgage held by Clearview and Plaatsdale is a third priority lien." The District Court ordered that "MERS's Mortgage against [Parcel No. 157] shall be foreclosed" and sold by the United States Marshal and directed that "any liens subsequent to the [MERS] Mortgage are foreclosed." The District Court further ordered that the proceeds of the sale were to be used first to satisfy the costs associated with the sale and then to satisfy the judgment in favor of MERS, directing that "[t]he surplus, if any, remaining after application of the proceeds as provided above, shall be returned to Patock and Lynch."

Clearview and Plaatsdale timely appealed the District Court's judgment.

## II.

The District Court had jurisdiction under 48 U.S.C. § 1612(a) and 28 U.S.C. § 1332(a) and we have jurisdiction under 28 U.S.C. § 1291. We note that the parties have filed several postjudgment motions which are pending in the District Court. Specifically, on April 7, 2008, Clearview and Plaatsdale filed a motion for reconsideration in the District Court. In addition, Patock filed a motion on June 17, 2008, requesting the District Court to set aside and vacate the entry of default and judgment, as well as a

4

motion on September 20, 2008, requesting the District Court to certify to this Court its intention to grant Patock's June 17 motion. These unresolved motions do not affect our jurisdiction over this matter.[2]

We exercise de novo review over the question of law presented in this case. *See Barclays Invs., Inc. v. St. Croix Estates*, 399 F.3d 570, 576 (3d Cir. 2005).

### III.

On appeal, Clearview and Plaatsdale assert that the District Court erred when it ordered that Patock and Lynch were entitled to any foreclosure sale surplus remaining after satisfaction of the judgment in favor of MERS. Clearview and Plaatsdale argue that

---

[2]Federal Rule of Appellate Procedure 4(a)(4) provides, *inter alia*, that where a district court has not yet entered an order disposing of a Rule 59 motion or a Rule 60 motion under the Federal Rules of Civil Procedure, filed within ten days of judgment, the notice of appeal fails to take effect until the district court enters such order. Fed. R. App. P. 4(a)(4)(A)(iv) and (vi), (a)(4)(B)(i); *see United States v. McGlory*, 202 F.3d 664, 668 (3d Cir. 2000) (en banc) (stating that if a motion for reconsideration is filed within ten days of judgment, it is treated as a Rule 59(e) motion); *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004) (stating that if a motion for reconsideration is filed after ten days from judgment, it is treated as a Rule 60 motion). Here, Clearview and Plaatsdale did not file their motion for reconsideration within ten days of judgment and thus subsections 4(a)(4)(A)(iv) and (vi) of the Federal Rules of Appellate Procedure are not applicable. *See United States v. Fiorelli*, 337 F.3d 282, 288-89 & n.3 (3d Cir. 2003) (discussing timeliness requirement under Rule 4(a)(4)). Nor do Patock's motions, brought pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure and months after judgment, cause delay in the notice of appeal taking effect. We have received no indication from the District Court of its intention to grant Patock's motion to vacate. *See Venen v. Sweet*, 758 F.2d 117, 123 (3d Cir. 1985) ("If a district court is inclined to grant the [Rule 60(b)] motion or intends to grant the motion, . . . it should certify its intention to the appellate court which can then entertain a motion to remand the case.").

the District Court should have ordered that any remaining surplus be distributed to them to satisfy their junior liens on Parcel No. 157 before Patock and Lynch, as holders of the equity of redemption, receive payment.

In the absence of Virgin Islands law to the contrary, "the common law, as expressed in the American Law Institute's Restatements of Law, fills the gaps in Virgin Islands statutory law." *Barclays Invs., Inc.*, 399 F.3d at 577.[3] Accordingly, the Restatement (Third) of Property (Mortgages) states that "[a] valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law." Restatement (Third) of Property (Mortgages) § 7.1. Here, in conformity with the Restatement (Third), the District Court's judgment states that MERS has a first priority lien on Parcel No. 157 and that Clearview and Plaatsdale hold second and third

---

[3]The Virgin Islands Code states:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

V.I. Code Ann. tit. 1, § 4. There is no local Virgin Islands law contrary to the relevant provisions in the Restatement (Third) of Property (Mortgages) and thus we rely on the Restatement rules. *See* V.I. Code Ann. tit. 28, § 533 (directing that the judgment "determine and specify the order of time, according to their priority, in which the debts secured by such lien shall be satisfied out of the proceeds of the sale of the property"); *Andrews v. Nathaniel*, 42 V.I. 34, 41 (2000) (applying Restatement (Third) to mortgage foreclosure because "[t]here are no local laws to the contrary").

priority liens on Parcel No. 157, and orders that all liens on the property are foreclosed. There is no dispute on appeal as to this portion of the judgment.[4]

The Restatement (Third) also specifies how any foreclosure sale surplus is to be distributed. As a general rule, "[w]hen the foreclosure sale price exceeds the amount of the mortgage obligation, the surplus is applied to liens and other interests terminated by the foreclosure in order of their priority and the remaining balance, if any, is distributed to the holder of the equity of redemption." Restatement (Third) of Property (Mortgages) § 7.4. There are "two important corollaries [that] flow" from this rule: (1) "[T]he liens and other interests terminated by the foreclosure attach to the surplus in order of the priority they enjoyed prior to the foreclosure" regardless of whether the junior liens are in default at the time the senior mortgage is foreclosed[5] and (2) "the claim of the holder of the foreclosed equity of redemption to the surplus is subordinate to the claims of all other holders of liens and interests terminated by the foreclosure." Id. § 7.4 cmt. b. At first

_____

[4]Although Patock did not argue to the District Court that the Second and Third Mortgages fail to qualify as liens under Virgin Islands law, he attempts for the first time on appeal to capitalize on the fact that these mortgages are captioned "collateral mortgages" by asserting that such mortgages only indirectly secure debt. But Patock does not cogently explain why he believes the mortgages, even if "collateral," should not be considered liens under Virgin Islands law. See V.I. Code tit. 28, § 531 ("A lien upon real property . . . whether created by mortgage or otherwise, shall be foreclosed . . . by an action of an equitable nature."). And to the contrary, he concedes in his brief that the Second and Third Mortgages are "liens of Clearview and Plaatsdale." Thus, we will not disturb the District Court's finding that the Second and Third Mortgages are second and third priority liens on Parcel No. 157.

[5]Consequently, we reject Patock's argument that a junior lienholder whose mortgage is not in default has no entitlement to any surplus.

blush, therefore, it would appear that Clearview and Plaatsdale, as junior lienholders, should receive any surplus to satisfy their junior liens before any distribution is made to Patock and Lynch, the holders of the equity of redemption.

But the result under the Restatement (Third) is different "where a junior lien secures a contingent obligation," in which case the holder of the junior lien is not necessarily entitled to priority over the holder of the equity of redemption. *Id.* While the Restatement (Third) does not define the term "contingent obligation," it provides the following illustration:

> Debtor borrows $100,000 from Lender and gives Lender a promissory note for that amount. Mortgagor, a relative of Debtor, executes and delivers to Lender Mortgagor's personal guaranty of Debtor's obligation to Lender. To secure the guaranty, Mortgagor delivers to Lender a mortgage on Blackacre, land owned by Mortgagor which is already subject to a senior mortgage. While Debtor's obligation to Lender is still unsatisfied, the senior mortgage on Blackacre is validly foreclosed and the foreclosure sale produces a surplus. Lender has no present right to the surplus. Rather, the surplus should be paid into court or an escrow account and appropriately invested until it is determined the extent to which mortgagor becomes liable under the guaranty.

*Id.* § 7.4 cmt. b, illus. 3. As the comment explains, "[i]n such a situation it would be inappropriate to pay surplus to a junior mortgagee who ultimately may never be entitled to it." *Id.* § 7.4 cmt. b. Thus, the appropriate remedy is for the surplus to "be paid into court or into an escrow account and appropriately invested until the extent of the mortgagor's liability, if any, is determined." *Id.*

8

Based on the record before us, it appears that the Second and Third Mortgages held by Clearview and Plaatsdale may be contingent. The terms of these mortgages clearly state that D & E is indebted to Clearview and Plaatsdale and that Patock and Lynch executed the two mortgages on Parcel No. 157 in favor of Clearview and Plaatsdale to secure the debt owed by D & E. Consequently, the fact that MERS foreclosed its senior lien on Parcel No. 157 does not necessarily per se entitle Clearview and Plaatsdale to a present right to any remaining surplus until the status of the D & E loan, which the foreclosed junior liens secure, is determined. *See id.* (discussing result for foreclosed junior liens securing contingent obligations).

Moreover, we agree with Clearview and Plaatsdale that the judgment, as it stands, is erroneous because it fails to acknowledge the priority of their junior liens on Parcel No. 157, even as it recognizes and forecloses those liens. The District Court's allocation of surplus to Patock and Lynch might be understandable had the District Court found that D & E's indebtedness to Clearview and Plaatsdale was satisfied. *Cf. id.* § 7.4 cmt. b, illus. 3 (providing that the senior mortgage is foreclosed "[w]hile Debtor's obligation to Lender is still unsatisfied"). But the record indicates that the junior liens were still in existence on Parcel No. 157 when the District Court issued its judgment. It was apparently undisputed before the District Court that the Second and Third Mortgages were still outstanding and not in default. Indeed, at the time of judgment, the District Court found that Clearview and Plaatsdale held second and third priority liens on Parcel No. 157 and

9

expressly foreclosed those liens.  Furthermore, Patock admits in his appellate brief that "[t]here is no evidence of any default in the underlying obligations" secured by the Second and Third Mortgages.

On this record, we cannot agree that the District Court was correct to directly distribute to Patock and Lynch any foreclosure sale surplus remaining after satisfaction of MERS's judgment.  We therefore remand to the District Court to determine in the first instance whether the Second and Third Mortgages secure contingent obligations and, if so, to order that any remaining surplus be paid into court or an escrow account until the liabilities of Patock and Lynch under those mortgages are determined.  *See id.* § 7.4 cmt. b.

IV.

For the foregoing reasons, we will reverse that portion of the judgment allocating any remaining surplus to Patock and Lynch and will remand this case to the District Court to proceed in accordance with this opinion.